# In the Matter Of:

## MARTINEZ VS. WHATABURGER

DC-13-420

## JUAN MARTINEZ

*July 11, 2014*





800.211.DEPO (3376)
EsquireSolutions.com

```
 1                      CAUSE NO. DC-13-420

 2    JUAN F. MARTINEZ                §      IN THE DISTRICT COURT
                                      §
 3    vs.                             §      STARR COUNTY, TEXAS
                                      §
 4    WHATABURGER FRANCHISE LLC       §      229TH JUDICIAL DISTRICT

 5

 6

 7

 8

 9                ORAL DEPOSITION OF JUAN MARTINEZ

10                          July 11, 2014

11

12

13

14

15

16              ORAL DEPOSITION OF JUAN MARTINEZ, produced

17    as a witness at the instance of the Defendant and duly

18    sworn, was taken in the above-styled and numbered cause on

19    July 11, 2014, from 11:57 A.m. to 3:28 P.m., before

20    Annette E. Escobar, Certified Shorthand Reporter in and

21    for the State of Texas, reported by computerized stenotype

22    machine at the offices of Shiree Salinas, 4900-B Suite A,

23    North 10th, McAllen, Texas, pursuant to the Texas Rules of

24    Civil Procedure and the provisions stated on the record or

25    attached hereto.
```



```
 1                        APPEARANCES

 2    ATTORNEY FOR PLAINTIFF:

 3            Shiree Salinas
              LAW OFFICE OF SHIREE SALINAS, PLLC
 4            Suite A-4, North Towne Centre
              4900 North 10th Street
 5            McAllen, TX   78504
              Telephone: 956.686.8797
 6

 7    ATTORNEY FOR DEFENDANT:

 8            Raymond T. Fischer
              CROUCH & RAMEY, LLP
 9            2001 Ross Avenue, Suite 4400
              Dallas, TX   75201
10            Telephone: 214.922.7100
              Fax:   214.922.7101
11            E-mail: rfischer@crouchfirm.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



```
 1      Q    What are you -- what applicable laws, rules and
 2   regulations do you feel the Whataburger was not in
 3   compliance with?
 4              MS. SALINAS:  Objection, form.  Counsel,
 5   you know that particular portion of the petition has to do
 6   with allegations that we would address with expert report
 7   testimony.  This witness doesn't have any legal expertise
 8   and relying upon counsel for pleadings that deal with
 9   specific causes of action.
10              MR. FISCHER:  Are you instructing him not
11   to answer the question?
12              MS. SALINAS:  No, sir, I'm not.  I'm just
13   making it simple for you to understand what my objection
14   would be and I think it's, you know -- well, go ahead.  I
15   just think it's unfair, an unfair attempt to impose or
16   unfair to impose that duty when he has counsel.
17              Go ahead, counsel.
18      Q    (By Mr. Fischer) What rules, regulations --
19   excuse me.  What laws, rules and regulations for the
20   safety of its patrons do you believe the Whataburger was
21   not in compliance with?
22      A    Not having enough space.
23              MS. SALINAS:  Same objection.
24      Q    (By Mr. Fischer) When you say not having enough
25   space what do you mean?
```



```
 1                 MS. SALINAS:  Give me time, Mr. Martinez.
 2     Just a moment.  Objection, form.  You can answer the
 3     question, sir.  You can answer the question.  The
 4     objection was just procedural matter.
 5         A    I thought I had to shut up.  Not enough space
 6     from the door to the edge of the curb.  This is a standard
 7     sized chair.  Can you imagine one with several inches
 8     more.  They won't be able to go through.
 9         Q    So accessibility is, you're saying this
10     Whataburger had issues with accessibility?
11         A    Yeah.
12         Q    Are you saying this Whataburger had issues with
13     the width of its sidewalk?
14         A    Yes.
15         Q    Did it have issues with entrance and exiting the
16     restaurant?
17         A    Yes.
18         Q    Would you say that this Whataburger had issues
19     with serving and accommodating people in wheelchairs such
20     as yourself?
21                 MS. SALINAS:  Objection, form.
22         A    No.
23         Q    No?
24         A    No, not serving.  We're not talking about the
25     inside.
```



```
 1                 MS. SALINAS:  Objection, form.
 2       Q    -- accessibility for handicapped persons?
 3                 MS. SALINAS:  Objection, form.
 4       A    Yes.
 5       Q    (By Mr. Fischer) Do you agree that buildings and
 6  construction sites have to comply with local regulations
 7  regarding accessibility for handicap persons?
 8       A    State and local.
 9       Q    And federal?
10                 MS. SALINAS:  Objection, form.
11       Q    And federal as well?
12                 MS. SALINAS:  Objection, form.
13       A    I don't know that much about construction.
14  Hello.  Federal, if you say federal, federal too.
15       Q    (By Mr. Fischer) So if we turn back to
16  Exhibit 16, that's this one.  As you know, I was just
17  saying that it's your complaint that one of your issues
18  with Whataburger is that if this is the sidewalk -- this
19  on the diagram is the sidewalk, one of your issues with
20  this Whataburger is that it did not have adequate space
21  for someone in a wheelchair --
22       A    Correct.
23       Q    -- to enter examine exit this restaurant?
24       A    Correct.
25       Q    And it did not have enough space to go to it
```



```
1      Q    Do you assert that this Whataburger Restaurant
2  is inaccessible to someone in a wheelchair?
3           MS. SALINAS:  Objection, form.
4      A    Not inaccessible.
5      Q    Do you believe that the Whataburger has problems
6  with the, it's doors for someone that is in a wheelchair?
7           MS. SALINAS:  Objection, form.
8      A    Yes.
9      Q    Do you believe this Whataburger has problems
10 with its sidewalk with, for someone in a wheelchair?
11     A    Yes.
12     Q    Are you -- strike that.
13          You mentioned you've been in this nursing
14 home before the incident, correct?
15     A    Correct.
16     Q    And I believe you said you've been in two years
17 before the incident; is that correct?
18     A    Correct.
19     Q    Did you tell anyone -- did you tell anyone not
20 to provide us with medical records?
21     A    No, I didn't.
22     Q    So you mentioned that your sutures healed.  Have
23 they permanently healed now?
24     A    They're different.  It's not healed the way it's
25 supposed.
```



1    A    No.
2    Q    Who is paying that?
3    A    Medicaid was paying that.
4    Q    Okay. So is there, have there been any doctor
5    visit that you have had to pay for?
6    A    No.
7    Q    Okay. So if I'm understanding this correctly
8    then you've not paid for your prosthesis and you have not
9    paid for the stay at the nursing home, correct?
10   A    Correct.
11   Q    And so your treatments for your blisters are
12   covered within your nursing home stay, correct?
13   A    Correct.
14   Q    Did you -- so have there been any other medical
15   costs outside of the doctor's visits you mentioned?
16   A    No.
17   Q    Those are the only costs you have incurred as a
18   result of this?
19            MS. SALINAS:  Objection, form.
20   A    Correct.
21   Q    We're almost done. Your lawsuit you mentioned
22   this before, but is this lawsuit so other handicapped
23   persons will not have to fall at Whataburger?
24            MS. SALINAS:  Objection, form. His lawsuit
25   is what his lawsuit says.



```
 1                  MR. FISCHER:  He can answer that.
 2                  MS. SALINAS:  Objection, form.
 3        A    If somebody else was to get hurt at that
 4   Whataburger I think it should be closed down.  If they
 5   don't fix that sidewalk and somebody else gets hurt again,
 6   maybe it will be a heavier set person who's with a
 7   wheelchair, wider wheelchair and falls over, I think that
 8   place should be closed down.
 9        Q    But that's --
10        A    The ones here in McAllen that I've been to, I
11   still go to Whataburger, because that morning we were
12   going to go to Denny's and I said, no, let's go to
13   Whataburger; I want biscuits and gravy.
14                  Every Whataburger here in McAllen in the
15   surrounding areas have plenty of space even if you have to
16   open the left door and go around.
17        Q    But that wasn't exactly my question.  My
18   question was --
19        A    If somebody else gets hurt, yeah.
20        Q    So this lawsuit is to prevent --
21        A    It's to prevent --
22                  MS. SALINAS:  Objection, form.
23        A    -- from somebody else getting hurt.
24        Q    To prevent somebody else in a wheelchair from
25   getting hurt?
```



800.211.DEPO (3376)
EsquireSolutions.com

JUAN MARTINEZ                                               July 11, 2014
MARTINEZ VS. WHATABURGER                                             108

```
 1      A    Yes.
 2      Q    You mentioned this a second ago.  Have you been
 3   to other Whataburgers in the McAllen area?
 4      A    Lots of times.
 5      Q    Have you been back to this Whataburger?
 6      A    Once after the incident.
 7      Q    Did you have any issues with the door that day?
 8      A    It was still locked.
 9      Q    Did you have any issues -- you didn't fall?
10      A    No, I didn't.
11      Q    Were you able to get around the door, the left
12   door as you're exiting the, that door on this day, the
13   second day?
14      A    Yes.
15      Q    Without incident?
16      A    Without incident.
17      Q    Will you continue to go to the Whataburger in
18   the future?
19      A    Of course.
20      Q    You believe that the other Whataburgers are
21   compliant with all rules, statutes and regulations?
22           MS. SALINAS:  Objection, form.
23      A    As far as I've been checking them out, yes.
24      Q    Okay.
25      A    They are compliant.
```



800.211.DEPO (3376)
EsquireSolutions.com